# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| KEVIN JONES, Individually and for Others Similarly Situated, | Case No. ___1:21-cv-00567_____ |
| Plaintiff, | Jury Trial Demanded |
| v. | FLSA Collective Action<br>Rule 23 Class Action |
| SOLARIS WATER MIDSTREAM, LLC, | |
| Defendant. | |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Kevin Jones (Jones) brings this class and collective action lawsuit to recover the unpaid overtime wages and other damages from Solaris Water Midstream, LLC (Solaris) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the New Mexico Minimum Wage Act (NMMWA), NMSA § 50-4-19, *et seq.*

2.      Jones worked for Solaris as an Inspector in and around Southeast New Mexico.

3.      Jones and the other Day Rate Inspectors' (as defined below) job duties included inspecting the interstate pipelines to ensure the safe transportation of goods.

4.      Jones and the other Day Rate Inspectors regularly work in excess of 40 hours each week.

5.      But Solaris does not pay them overtime for hours worked in excess of 40 hours in a single workweek.

6.      Instead of paying overtime, Solaris classified Jones and other Day Rate Inspectors as independent contractors and paid them a flat amount for each day worked and failed to pay them

overtime for hours worked in excess of 40 hours in a workweek in a workweek in violation of the FLSA and the NMMWA.

7.       Solaris never paid Jones and the Day Rate Inspectors a guaranteed salary.

8.       This class and collective action seeks to recover unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

9.       This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10.      This Court also has supplemental jurisdiction over the NMMWA claims pursuant to 28 U.S.C. § 1367.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

12.      Specifically, Jones worked for Solaris in and around the Delaware and Permian Basins in Southeast New Mexico, which is in the District.

13.      Further, Solaris conducts substantial business in the State of New Mexico, including but not limited to the shales in and around the Delaware and Permian Basins in Southeast New Mexico.[1]

14.      Indeed, Solaris is registered with the New Mexico Secretary of State to conduct business in New Mexico.

## THE PARTIES

15.      Jones worked for Solaris as an Inspector from approximately August 2019 until March

---

[1] http://www.solariswater.com/operations/ (describing Solaris's operations in New Mexico).

2021 in and around the Delaware and Permian Basins in Southeast New Mexico.

16.     Throughout his employment with Solaris, Solaris classified Jones as an independent contractor and paid him a day rate with no overtime compensation.

17.     Jones's consent to be a party plaintiff is attached as <u>Exhibit 1</u>.

18.     Jones brings this action on behalf of himself and all other similarly situated Inspectors who were paid by Solaris's day rate system.

19.     Solaris paid each of these Inspectors a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 hours in a workweek in a workweek in violation of the FLSA.

20.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All Inspectors employed by, or working on behalf of, Solaris who were classified as independent contractors and paid a day rate with no overtime at any time in the past 3 years (FLSA Class Members).**

21.     In addition to the FLSA Class, Jones seeks to represent the following class under the NMMWA pursuant to Rule 23:

> **All Inspectors employed by, or working on behalf of, Solaris who were classified as independent contractors and paid a day rate with no overtime in New Mexico at any time in the past 3 years (New Mexico Class Members).**

22.     The FLSA Class Members and the New Mexico Class Members will be collectively referred to as the Day Rate Inspectors.

23.     Solaris can be served with process through its registered agent: **NATIONAL REGISTERED AGENTS, INC., 206 S. Coronado Ave., Espanola, New Mexico 87532** or wherever it may be found.

## Coverage Under The FLSA

24.     At all relevant times, Solaris has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

25.     At all relevant times, Solaris has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

26.     At all relevant times, Solaris has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Solaris has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

27.     In each of the last 3 years, Solaris has had an annual gross volume of sales made or business done of at least $500,000.

28.     At all relevant times, Jones and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

29.     Indeed, Jones and the Day Rate Inspectors were engaged in foreign and/or interstate commerce and work on the channels and instrumentalities of interstate commerce, including but not limited to oil and gas pipelines across the country.

30.     Solaris treated Jones and the Day Rate Inspectors as employees and uniformly dictated the pay practices it applied to Jones and the Day Rate Inspectors.

31.     Indeed, Solaris uniformly applied its policy of paying the Day Rate Inspectors, including Jones, a day rate with no overtime compensation.

32.     Solaris applied this uniform pay scheme regardless of any alleged individualized factors such as precise inspector job position, pipeline, job duties/responsibilities, client assignments, or geographic location.

33.     By paying its Inspectors a day rate with no overtime compensation, Solaris violated (and continues to violate) the FLSA's requirement that it pay its employees overtime compensation at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

34.     As a result of Solaris's day rate pay policy, Jones and the Day Rate Inspectors do not receive overtime as required by the FLSA.

35.     Solaris's uniform compensation scheme of paying its employees a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. (29 U.S.C. § 207(a), (e).

36.     Solaris's misclassification of Jones and the Day Rate Inspectors as independent contractors does not alter their status as an employee for purposes of the FLSA.

### FACTS

37.     Solaris "builds sustainable, long term growth and value through the construction and operation of integrated produced water infrastructure systems that provide high capacity gathering, transportation, disposal, recycling/reuse, and bracking water supply solutions to oil and gas producers across the Permian Basin."[2]

38.     To complete its business objectives, Solaris hires Inspectors, including Jones and the Day Rate Inspectors, to inspect, observe, and test the workmanship and materials for compliance with

---

[2] http://www.solariswater.com/ (last visited June 15, 2021).

its policies and procedures, including the plans, specifications and applicable codes throughout the Southwest United States.

39.     Jones and the Day Rate Inspectors provide necessary inspection services to oil and gas pipelines and Solaris's water recycling systems that serve these pipelines across the Southwest United States.

40.     Indeed, Jones and the Day Rate Inspectors inspect the work on oil and gas pipelines and Solaris's water recycling systems in order to ensure they are constructed in accordance with Solaris's (and its clients') standards, protocols, and construction plans, as well as federal and state regulations.

41.     Solaris's clients are companies that own and operate pipelines that require Solaris's water recycling systems to properly function.

42.     Solaris relies on the inspection services Jones and the Day Rate Inspectors provide so its clients' pipelines can safely transport goods, including oil and gas.

43.     Solaris's clients typically maintain pipelines that enable the movement of goods and services across state lines as a stream of interstate commerce.

44.     Without the inspection services Jones and the Day Rate Inspectors provide to Solaris and its clients, oil and gas would not be able to travel across state lines through the pipelines on which Jones and the Day Rate Inspectors work.

45.     Indeed, the inspection services Jones and the Day Rate Inspectors provide to Solaris and its clients is necessary to keep the intra- and interstate flow of oil and gas.

46.     Jones and the Day Rate Inspectors, in part, ensure Solaris's (and its clients') appropriate compliance with state and federal safety and regulatory requirements.

47.     The Pipeline and Hazardous Materials Safety Administration sets federal standards that pipelines must comply with in their operation.

48.     Jones and the Day Rate Inspectors assist Solaris's clients in meeting all operation requirements set forth by the Pipeline and Hazardous Materials Safety Administration on a federal level and related state agencies.

49.     The inspection services Jones and the Day Rate Inspectors provide to Solaris and its clients immediately and necessarily precedes the action of oil and gas flowing along interstate pipelines across the country.

50.     Jones and the Day Rate Inspectors' work is centered on ensuring the safe transport of oil and gas along intra- and interstate pipelines across the country by making sure the pipelines necessary to transport oil and gas to its ultimate destination are constructed and/or repaired in accordance with established standards, procedures, plans, and regulations.

51.     Solaris does not hire Jones and the Day Rate Inspectors on a project-by-project basis.

52.     Rather, Solaris hires and treats these Inspectors just like regular, even if sometimes short-term, employees.

53.     Many of these Inspectors worked for Solaris on a day rate basis and make up the proposed putative class of Day Rate Inspectors.

54.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

55.     For example, Jones worked for Solaris as an Assistant Chief Inspector from approximately August 2019 until March 2021.

56.     Throughout his employment with Solaris, Solaris paid Jones on a day rate basis with no overtime pay.

57.     Solaris paid Jones and the Day Rate Inspectors a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to pay them overtime when they worked in excess of 40 hours in a workweek.

58.     Jones and the Day Rate Inspectors do not receive a guaranteed salary.

59.     Solaris only pays Jones and the Day Rate Inspectors their day rate or the actual days they worked.

60.     If Jones and the Day Rate Inspectors did not work, they did not get paid.

61.     Jones and the Day Rate Inspectors receive a day rate.

62.     Jones and the Day Rate Inspectors do not receive overtime pay.

63.     This is despite the fact Jones and the Day Rate Inspectors often work at least 12-16 hours a day, for up to 7 days a week, for weeks at a time.

64.     Although Jones and the Day Rate Inspectors typically worked 5-7 days a week, for at least 12-16 hours a day, they did not receive any overtime pay.

65.     Jones and the Day Rate Inspectors work in accordance with the schedule set by Solaris.

66.     Jones's work schedule is typical of the Day Rate Inspectors.

67.     Solaris knows Jones and the Day Rate Inspectors work for at least 12-16 hours a day, for up to 7 days a week, for weeks at a time.

68.     Solaris's records reflect the fact that Jones and the Day Rate Inspectors regularly work far in excess of 40 hours in certain workweeks.

69.     Solaris does not pay Jones or the Day Rate Inspectors overtime for hours worked in excess of 40 in any of those weeks.

70.     Instead, Solaris pays Jones and the Day Rate Inspectors on a day rate basis.

71.     Indeed, Solaris controls Jones and the Day Rate Inspectors' pay.

72.     For example, Jones received a day rate of approximately $750 (which includes various per diem payments, such as mileage and for lodging) for each day he worked for Solaris.

73.     Jones and the Day Rate Inspectors received their day rate regardless of the number of hours they worked in a day or week, even when they worked more than 40 hours in a workweek.

74.     Jones and the Day Rate Inspectors are not employed on a salary basis.

75.     Jones and the Day Rate Inspectors do not, and have never, received guaranteed weekly compensation from Solaris irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

76.     Solaris's policy of paying Jones and the Day Rate Inspectors a day rate with no overtime compensation violates the FLSA and NMMWA because it deprives Jones and the Day Rate Inspectors of overtime for the hours they work in excess of 40 hours in a single workweek.

77.     Solaris controls Jones and the Day Rate Inspectors' work.

78.     Solaris requires Jones and the Day Rate Inspectors to follow Solaris's policies and procedures.

79.     Jones and the Day Rate Inspectors' work must adhere to the quality standards put in place by Solaris.

80.     Jones and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

81.     As Inspectors, Jones and the Day Rate Inspectors' job duties include inspecting, observing, and testing the workmanship and materials for compliance with Solaris's policies and procedures, including the plans, specifications and applicable codes throughout the Southwest United States.

82.     At all relevant times, Solaris maintained control, oversite, and direction of Jones and the Day Rate Inspectors, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

83.     Jones and the Day Rate Inspectors do not have the power to hire, fire, or discipline any Solaris employees.

84.     Very little skill, training, or initiative is required of Jones and the Day Rate Inspectors to perform their job duties.

85.     Indeed, the daily and weekly activities of Jones and the Day Rate Inspectors are routine and largely governed by standardized plans, procedures, and checklists created by Solaris.

86.     Virtually every job function is predetermined by Solaris, including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

87.     Solaris prohibits Jones and the Day Rate Inspectors from varying their job duties outside of the predetermined parameters and requires Jones and the Day Rate Inspectors to follow Solaris's policies, procedures, and directives.

88.     All of Solaris's Day Rate Inspectors perform similar inspection job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

89.     Jones's working relationship with Solaris is similar to that of the Day Rate Inspectors.

90.     Without the job performed by Jones and the Day Rate Inspectors, Solaris would not be able to complete its business objectives of providing necessary water recycling services to oil and gas pipelines.

91.     Jones and the Day Rate Inspectors relied on Solaris for work and compensation.

10

92.     Jones and the Day Rate Inspectors worked in accordance with the schedule set by Solaris.

93.     Jones and the Day Rate Inspectors cannot subcontract out the work they are assigned by Solaris.

94.     Jones and the Day Rate Inspectors did not substantially invest in the tools required to complete the overall job to which they were assigned.

95.     Rather, Solaris incurred the large-scale business and operating expenses like rent, payroll, marketing, equipment, tools, and materials.

96.     Jones and the Day Rate Inspectors did not market their services while employed by Solaris.

97.     Jones and the Day Rate Inspectors worked exclusively for Solaris during the relevant period.

98.     Solaris set Jones and the Day Rate Inspectors' work schedule, which prohibited them from working other jobs for other companies while working for Solaris.

99.     At all relevant times, Solaris maintained control, oversight, and direction of Jones and the Day Rate Inspectors, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

100.     Solaris knew Jones, and other Day Rate Inspectors, worked more than 40 hours in a week.

101.     Solaris knew, or showed reckless disregard for whether, the Day Rate Inspectors were not exempt from the FLSA and NMMWA's overtime provisions.

102.     Nonetheless, Solaris failed to pay Jones and the Day Rate Inspectors overtime.

103.    Solaris knowingly, willfully, or in reckless disregard carried out this illegal day rate pay plan that deprived Jones and the Day Rate Inspectors of overtime compensation in violation of the FLSA and the NMMWA.

104.    Solaris's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

105.    Solaris willfully violated the FLSA and NMMWA.

### CAUSE OF ACTION
### FLSA VIOLATIONS

106.    Jones brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

107.    Solaris employed, or employs, Jones and the Day Rate Inspectors within the meaning of the FLSA.

108.    By failing to pay Jones and the Day Rate Inspectors overtime when they worked in excess of 40 hours in a workweek, Solaris has violated, and is violating, Section 7 of the FLSA. (29 U.S.C. § 207.)

109.    Solaris failed to pay Jones and the Day Rate Inspectors a guaranteed salary or on a "salary basis."

110.    Solaris failed to pay Jones and the Day Rate Inspectors overtime as required by the FLSA.

111.    Instead, Solaris paid Jones and the Day Rate Inspectors a day rate with no overtime.

112.    Solaris knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Inspectors overtime compensation.

113.    Solaris's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

114.     Accordingly, Jones and the Day Rate Inspectors are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

## CAUSE OF ACTION
## NMMWA VIOLATIONS

115.     Jones brings this claim under the NMMWA as a Rule 23 class action.

116.     The conduct alleged herein violates the NMMWA. NMSA § 50-4-19 *et seq.*

117.     At all relevant times, Solaris was subject to the requirements of the NMMWA.

118.     At all relevant times, Solaris employed Jones and each New Mexico Class Member as an "employee" within the meaning of the NMMWA.

119.     Solaris's pay policy denied Jones and the New Mexico Class Members overtime compensation, as required by the NMMWA.

120.     Solaris's failure to pay Jones and the New Mexico Class Members overtime at rates not less than one and one-half times their regular rate violates the NMMWA. NMSA § 50-4-22(C).

121.     Solaris owes Jones and the New Mexico Class Members the difference between the rate actually paid and the proper overtime rate.

122.     Solaris is also liable to Jones and the New Mexico Class Members for "an additional amount equal to twice the unpaid … wages" as treble damages. NMSA § 50-4-26(C).

123.     Jones and the New Mexico Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action, as provided by the NMMWA. NMSA § 50-4-26(E).

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

124.     The illegal pay practices Solaris imposed on Jones were likewise imposed on the Day Rate Inspectors.

125.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and NMMWA.

126.     Numerous other individuals who worked with Jones indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

127.     Based on his experiences and tenure with Solaris, Jones is aware that Solaris's illegal practices were imposed on the Day Rate Inspectors.

128.     The Day Rate Inspectors were all not afforded the overtime compensation when they worked in excess of 40 hours per week.

129.     Solaris's failure to pay wages and overtime compensation at the rates required by state and federal law, including the FLSA and NMMWA, result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Inspectors.

130.     Jones's experiences are therefore typical of the experiences of the Day Rate Inspectors.

131.     The specific job titles or precise job locations of the Day Rate Inspectors do not prevent collective treatment.

132.     Jones has no interest contrary to, or in conflict with, the Day Rate Inspectors.

133.     Like each Day Rate Inspector, Jones has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

134.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

135.     Absent this class and collective action, many Day Rate Inspectors likely will not obtain redress of their injuries and Solaris will reap the unjust benefits of violating the FLSA and NMMWA.

14

136.    Furthermore, even if some of the Day Rate Inspectors could afford individual litigation against Solaris, it would be unduly burdensome to the judicial system.

137.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

138.    The questions of law and fact common to the Day Rate Inspectors predominate over any questions affecting solely the individual members.

139.    Among the common questions of law and fact are:

a.      Whether Solaris employed the Day Rate Inspectors within the meaning of the applicable state and federal statutes, including the FLSA and NMMWA;

b.      Whether the Day Rate Inspectors were improperly misclassified as independent contractors;

c.      Whether Solaris's decision to classify the Day Rate Inspectors as independent contractors was made in good faith;

d.      Whether Solaris's day rate pay practice satisfies the salary basis test;

e.      Whether Solaris's decision to not pay time and a half for overtime to the Day Rate Inspectors was made in good faith;

f.      Whether Solaris's violation of the FLSA was willful; and

g.      Whether Solaris's illegal pay practices were applied uniformly across the nation to all Day Rate Inspectors.

140.    Jones's claims are typical of the claims of the Day Rate Inspectors. Jones and the Day Rate Inspectors sustained damages arising out of Solaris's illegal and uniform employment policy.

141.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

15

142.    Therefore, this issue does not preclude class or collective action treatment.

**JURY DEMAND**

143.    Jones demands a trial by jury.

**RELIEF SOUGHT**

144.    WHEREFORE, Jones prays for judgment against Solaris as follows:

a.      For an Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to the Day Rate Inspectors with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      For an Order appointing Jones as representative and his counsel to represent the interests of the FLSA Class and the New Mexico Class;

c.      For an Order finding Solaris liable to Jones and the FLSA Class for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d.      For an Order finding Solaris liable to Jones and the New Mexico Class for unpaid overtime owed under the FLSA, as well as treble damages in an amount equal to twice their unpaid compensation;

e.      Certification of the New Mexico Class pursuant to Fed. R. Civ. P. 23;

f.      For an Order awarding attorneys' fees, costs and pre- and post-judgment interest at the highest available rates; and

g.      For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*

**Michael A. Josephson**
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Jones A. Jones**
Texas Bar No. 24107823
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**